UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN CASUALTY COMPANY OF
READING PENNSYLVANIA,

        Plaintiff,

                           Case No.: 8:07-cv-421-T-33EAJ
v.

HEALTH CARE INDEMNITY, INC.,

        Defendant.
_____/


**ORDER**

    This matter comes before the Court upon consideration of Defendant Health Care Indemnity, Inc.'s Motion for Summary Judgment (Doc. # 47), which was filed on April 17, 2008. Plaintiff American Casualty Company of Reading Pennsylvania filed its Response in Opposition to the Motion for Summary Judgment (Doc. # 66) on May 12, 2008. For the reasons that follow, the motion for summary judgment is denied without prejudice.

**I.**   **Background**

    Plaintiff American Casualty Company of Reading Pennsylvania (hereafter "ACC") and Defendant Health Care Indemnity, Inc. (hereafter, "HCI") are both insurance companies that provided insurance coverage in one form or another to Dorothy Butler, a speech pathologist, who is not a

party to the present suit.[1]  The purpose of this suit is to
determine the liability as between the two insurance companies
with respect to a sizeable jury verdict returned against
Butler after a trial in state court.  This Court will refer to
the state court proceedings initiated by the O'Dell Estate in
the Circuit Court of the Sixth Judicial Circuit in and for
Pinellas County, Florida, against Butler and others as "the
O'Dell Litigation."

     The O'Dell Litigation had at its heart the death of Linda
O'Dell, a 46-year-old woman.   The operative complaint
governing the O'Dell Litigation was the Fifth Amended
Complaint.   In general, the Fifth Amended Complaint alleged
that Butler instructed another doctor to install a valve on
O'Dell's tracheotomy tube to assist in O'Dell's recovery after
an automobile collision with a drunk driver.  The Court draws
from the following factual allegations as stated in the Fifth
Amended Complaint, filed in the O'Dell Litigation, to describe
the nature of O'Dell's condition and Butler's role in her

---

[1] HCI submits in its motion for summary judgment that
"HCI disputes that Dorothy Butler qualifies as an insured
under its policy; however, since this motion for summary
judgment establishes that HCI obtained a release on Dorothy
Butler's behalf for her alleged negligence, HCI accepts as
true that Butler was in fact an insured, for the purposes of
this motion only." (Doc. # 47 at 2).

demise:

> Defendant Dorothy Butler was a speech pathologist who was working as an agent, employee, servant, and/or contractor or consultant at multiple hospitals and nursing home facilities throughout Pinellas County, Florida. . . . On April 26, 2001, Linda O'Dell was admitted to Bayfront Medical Center after suffering bodily injuries when she was struck by a drunk driver in a motor vehicle collision.  Ms. O'Dell remained hospitalized for approximately one month, at which time her condition stabilized and her treating physicians recommended placement in a nursing home facility for continued skilled care.  On or about May 30, 2001, Linda O'Dell was discharged from the hospital and was accepted for placement at Greenbrook NH. When she was admitted to Greenbrook NH, Linda O'Dell was on antibiotics with a tube feed and had a tracheotomy in place, thus requiring continued respiratory and supportive care. Additionally, Ms. O'Dell was a bed-bound resident who was totally dependent upon the nursing home facility . . . for skilled nursing, tracheotomy, respiratory and supportive care.  While a resident at Greenbrook NH, Linda O'Dell was under the care of . . . Defendant Butler and Defendant Pagan. On July 18, 2001, while working at Greenbrook NH, Defendant Butler recommended a video swallow study to be performed on Linda O'Dell to determine if she could tolerate oral dietary intake.  On July 23, 2001, Ms. O'Dell was admitted to the Edward White hospital where an evaluation was completed by Defendant Butler and a fluoroscopy study was subsequently performed.  According to the "Edward White Hospital Department of Speech Language Pathology Videofluoroscopy Swallow Report" completed by [Defendant] Butler, Ms. O'Dell was positive for aspiration of thin liquid barium but not of thick liquid or puree.  In her subsequent report Defendant Butler recommended that Linda O'Dell be placed on a regular diet, with thin liquids, and wear a Passy Muir valve for assistance while eating.  Defendant Butler did not outline and/or provide any specific instruction or training

3

as to the institution, placement or use of the Passy Muir device or make any recommendations that Ms. O'Dell be monitored for any specific timeframe to determine if she could tolerate the device without experiencing respiratory distress. Further, Defendant Butler did not outline and/or provide any specific instruction or training as to the tracheotomy cuff use, cuff deflation and the application of oxygen when instituting a Passy Muir valve. . . . Following placement of the Passy Muir valve and institution of said diet, Ms. O'Dell was left unattended in her room by the facility staff. Shortly thereafter, she experienced respiratory distress, suffocated and died on July 24, 2001, at the age of 46.

(Doc. # 1-5 at ¶¶ 3-26).

According to ACC's complaint in the present case, the jury in the O'Dell Litigation rendered a verdict in favor of the O'Dell Estate on January 24, 2006, in the amount of $2,577,980. (Doc. # 1 at ¶ 35).  ACC asserts in its complaint that "immediately prior to the return of the jury verdict, Ms. Butler and the O'Dell Estate entered into a 'high-low' agreement." (Doc. # 1 at ¶ 31).  As alleged by ACC, the jury found Butler to be 95% at fault.  (Doc. # 1 ¶ 35). Furthermore, ACC asserts, "Pursuant to Florida Statute § 768.81, the jury verdict would have entitled plaintiffs [the O'Dell Estate] to have judgment entered against Ms. Butler for the net amount of $2,577,980, but for the high-low agreement, which capped her liability at $1,000,000." (Doc. # 1 at ¶ 35).

ACC asserts that it paid the O'Dell Estate $1,000,000, on

4

behalf of Butler, and that it incurred $429,255.72 in fees and costs related to Butler's defense. (Doc. # 1 at ¶¶ 40-41).

Thus, on March 8, 2007, ACC, individually and as a subrogee of Dorothy Butler, filed suit in this Court against Defendant HCI seeking declaratory relief and damages. (Doc. # 1). ACC asserts that ACC's insurance policy provided Butler with excess coverage and that HCI was the primary carrier. Accordingly, in count one of its complaint, ACC seeks a declaration that "in regard to the claims made against Ms. Butler in the O'Dell Estate's Fifth Amended Complaint, HCI's policy provides primary coverage; American Casualty's policy provides excess coverage; and HCI breached its duties to defend and indemnify Ms. Butler in the O'Dell Litigation." (Doc. # 1 at ¶¶ 49-57).

In count two, ACC seeks equitable/conventional subrogation from HCI in an amount equal to 100% of the amount paid by ACC in indemnity to the O'Dell Estate to settle the O'Dell Estate's liability claims against Butler, and 100% of the amounts paid by ACC to defend Butler in the O'Dell Litigation. (Doc. # 1 at ¶¶ 58-73). In count three, ACC seeks an alternative declaratory judgment that "HCI is a co-primary insurer responsible for payment of a pro rata by policy limits share of indemnity." (Doc. # 1 at ¶¶ 74-82). In count four,

ACC asserts an alternative claim for equitable contribution from HCI. (Doc. # 1 at ¶¶ 83-96).[2]

HCI filed its answer and affirmative defenses to ACC's complaint on April 30, 2007 (Doc. # 12), and filed an amended answer and affirmative defenses on July 19, 2007. (Doc. # 22).[3]  HCI attached one exhibit to its amended answer and affirmative defenses: a document titled "General Release and Settlement Agreement" purporting to govern a portion of the parties' dispute; however, the document is not executed. (Doc. # 22-1).  On May 7, 2008, HCI filed its Corrected Exhibit to Amended Answer and Affirmative Defenses (Doc. # 62).  The corrected exhibit is titled "Release of All Claims and Confidentiality Agreement" (hereafter the "Release"). (Doc. # 62).

## II. **Analysis**

On April 17, 2008, prior to the close of discovery and with only one exhibit attached thereto, Defendant filed its motion for summary judgment. (Doc. # 47).  The exhibit filed in support of HCI's motion for summary judgment is the same

---

[2]  ACC attached to the complaint the relevant ACC Policy (Ex. "A"); the relevant HCI Policy (Ex. "B"); and the Fifth Amended Complaint as filed in the O'Dell Litigation (Ex. "C").

[3]  The basis of this Court's jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332.

Release that Defendant filed as a corrected exhibit to its answer on May 7, 2008.

In its motion for summary judgment, HCI presents a number of arguments to the Court concerning judicial estoppel and res judicata.  For instance, HCI asserts that counsel for ACC presented certain successful arguments to the state court judge concerning the Release in the O'Dell Litigation and that counsel for ACC is now estopped from taking a contrary position in the present case:

> Here, Dorothy Butler argued to the [state] trial court both at summary judgment and on directed verdict that the HCI Release included the claims made against her while allegedly an employee of EWH [Edward White Hospital]. . . . The trial court explicitly agreed (but actually then disagreed that claimant was splitting her cause of action). Therefore, because Dorothy Butler successfully argued that HCI obtained a release on her behalf for the claims made against her, to the extent that the claims were covered by HCI's policy, Ms. Butler's subrogee [ACC] cannot now claim otherwise.

(Doc. # 47 at 9).

The record in this case contains various excerpts from the state court proceedings in the O'Dell Litigation.  The state court documents filed by the parties were filed in conjunction with an unsuccessful motion to disqualify counsel for ACC.  (Doc. ## 39, 56).  The parties' selections from the state court record presented through the prism of the

disqualification proceedings, although probative of the issues raised on summary judgment, are not the complete representation of the record that this Court needs in order to rule on HCI's motion for summary judgment.

To rule in HCI's favor on the limited record before the Court at this time would run afoul of Rule 56(c) of the Federal Rules of Civil Procedure, which states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In this case, discovery is ongoing, and the dispositive motions deadline expires on November 17, 2008. (Doc. # 95). Notably, HCI's motion for summary judgment was filed prior to the depositions of HCI's corporate representatives. (Doc. # 87).

Likely recognizing the limited record presently before the Court, Defendant recently represented to the Court that "it is expected that HCI will submit a supplemental Motion for Summary Judgment which presents arguments relying on undisputed facts reveled in discovery, once discovery is complete. It is expected that American Casualty will present

8

a Motion for Summary Judgment as well." (Doc. # 87 at 1).

Rather than presenting its arguments in a piecemeal fashion, and on the basis of a conglomeration of unorganized state court exhibit excerpts, this Court suggests that HCI present its arguments in one motion for summary judgment, submitted with supporting documents and with citations to the record within the motion for summary judgment to direct the Court to the evidence pertinent to each argument.

Accordingly, this Court denies Defendant's motion for summary judgment without prejudice.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Health Care Indemnity, Inc.'s Motion for Summary Judgment (Doc. # 47) is **DENIED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 20th day of October 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record